# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
    Plaintiff,

v.                               Case No. 04-CR-122

RONALD A. ARTHUR
    Defendant.

## SENTENCING MEMORANDUM

The government charged defendant Ronald Arthur with bankruptcy fraud and money laundering offenses. The offenses stemmed from defendant's attempt to use the bankruptcy court to evade a judgment a woman named Barbara Doyle had obtained against him based on damage done to her property by loggers affiliated with defendant. Defendant created and used phony entities, such as the "Xtant Foundation" and "Greystone Communications," as well as sham martial property agreements, to hide his assets and income from Doyle and his other creditors, repeatedly lied during the course of the bankruptcy proceeding, and involved his wife in his concealment, resulting in her being charged as well. The money laundering charges arose out of his attempts to conceal his assets and the proceeds of the bankruptcy fraud in the bank accounts of fictitious entities, and the subsequent financial transactions in which he engaged using those accounts, including the purchase of a Honda Civic and SEA DOO personal water-craft. I found defendant guilty of twenty-three of the twenty-six counts in which he was charged after a court trial.

The probation office prepared a pre-sentence report ("PSR"), setting defendant's

offense level on the bankruptcy fraud group[1] at 24 (base level 6, U.S.S.G. § 2B1.1(a), plus 10 based on loss amount, § 2B1.1(b)(1)(F), plus 2 based on misrepresentation in a bankruptcy proceeding, § 2B1.1(b)(8)(B), plus 2 for use of sophisticated means, § 2B1.1(b)(9)(C), plus 2 for role in the offense, § 3B1.1(c), and plus 2 for obstruction of justice, § 3C1.1). On the money laundering group,[2] the PSR set an offense level of 30 (base level 24, U.S.S.G. § 2S1.1(a)(1), plus 2 based on defendant's conviction under 18 U.S.C. § 1956, § 2S1.1(b)(2)(B), plus 2 for sophisticated laundering, § 2S1.1(b)(3)(B), and plus 2 for obstruction of justice, § 3C1.1). The PSR awarded no reduction of acceptance of responsibility under § 3E1.1 because defendant went to trial. The PSR set the final offense level at 30 under U.S.S.G. § 3D1.2(c) and, coupled with defendant's criminal history category of I, recommended an imprisonment range of 97-121 months.

Prior to sentencing, defendant advised the court that he was discharging his attorney and electing to proceed pro se.[3] I conducted a colloquy with defendant at the sentencing hearing and found that he was knowingly, voluntarily and intelligently waiving assistance of counsel. Counsel nevertheless agreed to remain as "stand-by" counsel during the sentencing proceeding, and defendant accepted that arrangement.

Defendant filed forty-six pages of objections to the PSR and requests for departures, and made a lengthy sentencing presentation at the hearing. In this

---

[1] The PSR grouped the bankruptcy fraud offenses together under U.S.S.G. § 3D1.2(b).

[2] The PSR again grouped these offenses under § 3D1.2(b).

[3] Refer to my previous orders concerning defendant's issues with counsel and attempts to adjourn sentencing for more detail. (R. 133, 138, 143, 152.)

2

memorandum, I set forth my resolution of the guideline and departure issues, and state the reasons for the sentence imposed.

## I. SENTENCING PROCEDURE

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005). First, I determine the advisory guideline range, resolving any disputes necessary to that determination. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006).

## II. DISCUSSION

**A.    Guideline Determinations**

Before addressing Mr. Arthur's objections, which really only tangentially discussed the guidelines, I made some findings. First, as I indicated in a notice I sent to the parties prior to sentencing (R. 151), under application note 2(C) to U.S.S.G. § 2S1.1, any chapter 3 enhancements could be applied only on the money laundering group, not the bankruptcy fraud group. See U.S.S.G. § 2S1.1 cmt. n.2(C) ("Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived."). The purpose of this note is to prevent the double counting that would occur if such enhancements were applied both on the underlying crime and on the money

3

laundering offense. Therefore, in the present case, the enhancements for obstruction under § 3C1.1 and leadership role under § 3B1.1 could apply only on the money laundering group.

Second, in reviewing the materials for this sentencing and Mrs. Arthur's, I found that the enhancement for sophisticated laundering should not apply. Application note 5 to U.S.S.G. § 2S1.1 states that if "the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline." U.S.S.G. § 2S1.1 cmt. n.5(B). In the present case, I saw no additional conduct justifying the enhancement on the money laundering group. The PSR listed the use of shell entities and various bank accounts, but that was the same conduct used to justify the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(9)(C) on the bankruptcy fraud group. Therefore, the enhancement under U.S.S.G. § 2S1.1(b)(3) did not apply.

The government did not object to these two findings. I then turned to defendant's written submission, which was devoted largely to arguing that he was not guilty of the crimes. I indicated that such arguments had no place at sentencing and in any event were contrary to the evidence at trial and my written findings of fact. To the extent that defendant specifically addressed the factual statements and guideline recommendations in the PSR, I rejected his arguments.

**1. Rule 32**

Defendant first argued that his rights under Fed. R. Crim. P. 32 had been violated because the PSR had not been timely disclosed to him. However, defendant waived the time limits in Rule 32 after the verdict was rendered. Moreover, he failed to show prejudice

4

based on any failure to strictly adhere to the time limits in the Rule. He conceded that he had the PSR for more than two week prior to sentencing, and his filings indicated that he had plenty of time to review and dissect it.

**2. Loss Determination**

Defendant objected to the loss determination, stating that no victim suffered any actual loss.[4] However, under U.S.S.G. § 2B1.1, the loss enhancement is based on the greater of the actual or intended loss. U.S.S.G. § 2B1.1 cmt. n.3(A). In the present case, defendant intended to cause Barbara Doyle to lose her $125,000 judgment, which was alone sufficient to support a 10 level enhancement under § 2B1.1(b)(1)(F).[5] Defendant argued that he ultimately did not deprive the bankruptcy estate of any assets, but this was irrelevant to the issue of intended loss. Also irrelevant was defendant's claim that the Doyle judgment (which had been sustained by the state courts) was fraudulent. Defendant further claimed that the judgment was, at least in part, non-dischargeable, but defendant obviously thought it was dischargeable or voidable at one point because getting rid of it was his admitted motivation in filing for bankruptcy. In any event, intended loss under § 2B1.1 includes "harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1 cmt. n.3(A)(ii). Finally, I did not find it relevant that the trustee settled her case against defendant for $25,000. This was a compromise, did not establish the size of the

---

[4] After the bankruptcy trustee became suspicious, defendant agreed to waive discharge. Thus, Barbara Doyle did not actually lose her judgment as a result of defendant's fraud.

[5] The PSR listed two other debts as part of the loss determination, which resulted in a total loss figure of $195,000. Because these debts did not alter the enhancement range, I made no findings on them.

5

estate, or any other fact of significance at sentencing. Nor did it matter for guideline purposes that the bankruptcy court did not order any assets be turned over.

   **3.   Residence**

Defendant quibbled over whether he had a residence in Virginia prior to filing his bankruptcy petition in that state, which related to one of the false oaths or accounts of which he was convicted. I specifically found after trial that defendant lived in Wisconsin, but that he falsely claimed to live in Virginia in order to take advantage of that district's rules, which did not require disclosure of the assets of a non-filing spouse. (R. 76 at 7.) I adhered to that finding.

   **4.   Obstruction**

The PSR assessed defendant with an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 based on the fact that he coached his sister, Susan Svoboda, in committing perjury at trial. Defendant claimed that the government extracted this information from Svoboda under duress. However, he offered no evidence of that, and Svoboda signed a declaration indicating that defendant prepared her in delivering her testimony, which I found to be false. Based on that declaration and my previous findings, I found that defendant was subject to the enhancement under U.S.S.G. § 3C1.1 because he suborned perjury. See U.S.S.G. § 3C1.1 cmt. n.4(b) (listing suborning perjury as an example of the type of conduct to which the enhancement applies).

Section 3C1.1 requires specific intent to obstruct justice, and the government bears the burden of proving by a preponderance of the evidence that the enhancement is warranted. United States v. Ewing, 129 F.3d 430, 434 (7th Cir. 1997). When the

6

enhancement is based on trial testimony, the court should find all of the elements of perjury: falsity, wilfulness and materiality. United States v. Brimley, 148 F.3d 819, 823 (7th Cir. 1998). The testimony must be intentionally false, rather than a result of confusion, mistake or faulty memory. See United States v. Dunnigan, 507 U.S. 87, 94 (1993). However, the court need not conduct a full scale perjury trial, as defendant suggested. Rather, it can make findings based on the available, reliable evidence, including that set forth in the PSR. See, e.g., United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005).

Based on Svoboda's declaration that defendant put her up to her testimony, which he did not deny, I found that defendant suborned perjury and did so with the intent to obstruct justice. Svoboda testified falsely in several material respects. First, she testified falsely that defendant lived in Virginia prior to his filing of the bankruptcy petition. This testimony was material because, if believed, would tend to negate guilt of one of the false oaths or accounts with which defendant was charged. The testimony was wilful and not the result of mistake. Svoboda and defendant knew full well where he was living. Based on her demeanor, I found Svoboda's trial testimony evasive and entirely unbelievable. The fact that she was coached by defendant was consistent with my observation of her demeanor.

Second, Svoboda testified falsely that the Honda Civic defendant bought with his concealed income was for Xtant to haul paper.[6] The contention was ridiculous, and I rejected it at trial. At sentencing I further found that it was willfully false because Xtant did no business, as defendant and Svoboda well knew, and material because, if believed,

---

[6]Xtant's alleged business was selling recycled paper. However, it did no actual business and served instead to hold defendant's concealed income.

7

would tend to negate guilt regarding the money laundering count, count 17, which pertained to this purchase.

Third, Svoboda's testimony that she, Mrs. Arthur and the other alleged directors of Xtant approved all expenditures was false. The money in the Xtant accounts was defendant's concealed income, and he controlled the accounts and made all the expenditures. Her testimony in this regard was willfully false and material because, if believed, would tend to negate guilt of concealment. Therefore, I imposed the § 3C1.1 enhancement.

### 5. False Information to the Bankruptcy Court

Defendant objected to the statement in the PSR that fraudulent information regarding legal services Mrs. Arthur allegedly provided to him was given to the bankruptcy court. He claimed that no evidence was presented supporting the assertion. To the contrary, in my written findings of fact I discussed the evidence on this issue (R. 76 at 33), which in any event did not create a specific guideline enhancement for defendant.

### 6. Sophisticated Means

Defendant objected to the sophisticated means enhancement because, he claimed, the shell corporations he used were just a red herring since the assets in them belonged to his wife. I found otherwise. (R. 76 at 2-4.) Further, application note 8(B) to U.S.S.G. § 2B1.1 defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. . . . Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated

8

means." U.S.S.G. § 2B1.1 cmt. n.8(B). Defendant engaged in such conduct, using fictitious entities such as Xtant and Greystone to hide his income. The instant offense was far more sophisticated than the average bankruptcy fraud case. Bankruptcy fraud can be committed by simply failing to disclose assets. Here, defendant did much more, creating phony entities to hide the assets he failed to disclose, which is just the sort of conduct for which the enhancement is designed.

### 7. Leader/Organizer

Defendant objected to the enhancement for leader or organizer under U.S.S.G. § 3B1.1(c). That provision applies if the defendant was an organizer or leader in criminal activity involving less than five participants. Application note 4 provides that factors the "court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 cmt. n.4.

In the present case, I found that defendant devised the concealment scheme, created the shell entities, controlled their bank accounts, recruited Mrs. Arthur to play a part in the scheme, and directed most of her activities in it. He also directed Svoboda in her false testimony at trial. He was clearly the leader of the other two participants and organized and directed the offense.[7]

Defendant argued that the crime was simply him filling out his bankruptcy paperwork

---

[7] He essentially admitted as much during his allocution.

wrong, and that he did not direct anyone in that. Of course, the crime consisted of much more, as discussed in my written findings. Defendant also tried to blame his bankruptcy lawyers, but I did not see how they were responsible for his lies and concealment. Defendant did not attempt an advice of counsel defense at trial, and sentencing was not the time to try one.

### 8. Conclusion as to Guidelines

Based the above findings, I concluded that the proper offense level was 26. The base level on the bankruptcy fraud counts was 6, plus 10 for loss, plus 2 for misrepresentation in a bankruptcy proceeding, plus 2 for sophisticated means, for an adjusted level of 20. Twenty became the base level on the money laundering group, plus 2 for conviction under § 1956(h), and plus 2 for obstruction and leadership role,[8] making the final level 26. Coupled with a criminal history category of I, defendant's imprisonment range was 63 to 78 months.

## B. Departure Requests

Defendant requested departure on various grounds, but none had any merit. He first asked for a departure based on the fact that his assertions were recommended and/or approved by his bankruptcy lawyers. Defendant presented absolutely no evidence of that, and given the consistent lying in which he engaged under oath, I had a very difficult time ascribing any of his conduct to counsel. In any event, as indicated above, this was really a trial issue. While I perhaps could depart in a case of "imperfect" advice of counsel, I declined to do so here because there was no evidence supporting the claim.

---

[8]Consistent with application note 2(C), these chapter 3 enhancements applied on the money laundering group.

10

Defendant also requested a departure based on his claim that he fully complied with his duty to disclose. The claim was contrary to the evidence and, in any event, was also not really a departure argument. His claim that his criminal lawyer should have presented evidence that the bankruptcy court found that the marital property agreements were not fraudulent also failed. The bankruptcy court made no such finding, and again this was not a sentencing issue. Defendant stated that he should not be held criminally liable for declining to disclose assets he did not literally own. However, he failed to disclose many assets that he clearly did own, and several others were transferred only on paper as part of the concealment scheme. Finally, defendant accused the bankruptcy trustee of violating her duties, but again he presented no evidence of that or explained the significance to sentencing.

Thus, I denied all of the departure requests and proceeded to imposition of sentence under § 3553(a).

**C.    Section 3553(a)**

In imposing sentence, the court must consider all of the factors set forth in 18 U.S.C. § 3553(a):

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training,

11

> medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

### 1. Nature of Offense

This case represented an egregious example of a defendant, who was also a lawyer, trying to take advantage of the system to put one over on the bankruptcy court and a creditor, and going to great lengths to do so. Defendant filed a bankruptcy petition to try to discharge his debt to Barbara Doyle and also fend off William and Randy Keefe, some loggers with whom defendant had been involved who apparently were making claims against him. In so doing, he repeatedly lied under oath, created shell entities to hide his assets, and involved his wife and sister in his fraud.

It was hard for me to understand why defendant went to such great lengths to discharge his debt to Doyle, but it became clear to me throughout this proceeding that the defendant is an extremely narcissistic person, who is convinced that he is always right, is smarter than everyone else and can use his skill as his lawyer to get his way. During his allocution, defendant finally displayed some insight into his character flaws, noting that he should have walked away from his disputes with Doyle and the Keefes, but he just could

12

not let it go. He also admitted that he tended to see the world through a lens of legal technicalities, which allowed him to fill out the bankruptcy forms in a manner he considered literally true, but which violated the spirit of the law.

Ultimately, no one actually lost money as a result of defendant's conduct – although the trustee certainly spent a lot of time and money to ferret out the truth – but I nevertheless considered it a serious crime. The courts must be able to demand the truth of litigants, especially when they are also lawyers. This is particularly true in the bankruptcy context, where courts depend upon the honest disclosure of assets by debtors seeking the protection of the law.

### 2.  **Character of Defendant**

Defendant was fifty-four years old and had no prior record. He graduated law school with honors and practiced law before moving into real estate and other business ventures. There was evidence in the record that defendant and his wife created a program for inner city residences with drug and alcohol problems, which gained some accolades and demonstrated concern for others. Defendant had been married since 1973 and had a daughter in college. He seemed to be in good health and had no substance abuse issues.

### 3.  **Purposes of Sentencing**

I considered defendant a relatively low risk of re-offending, given his lack of record and the insight he displayed into his conduct at sentencing. Nevertheless, given his widespread fraud and refusal to completely accept responsibility for breaking the law, I could not be certain of that. There was also a need for a substantial period of confinement

13

to provide just punishment, promote respect for law and deter others. Defendant had no correctional treatment or other rehabilitative needs.[9]

**4.     Guidelines**

The guidelines called for a term of 63-78 months. For several reasons, I found that a sentence slightly below the guidelines would be sufficient. First, defendant's guideline range was inflated by 2 levels because he was convicted of money laundering. Although his conduct violated the money laundering statute, it did not really seem to add much in terms of culpability. The underlying crime was concealment, and the concealment that violated the money laundering statutes was really just a continuation of that. Thus, under § 3553(a)(1), I did not view the crime differently based on the money laundering

---

[9]The government argued that Barbara Doyle was a victim entitled to restitution. However, under the Mandatory Victim Restitution Act ("MVRA"), a victim is defined as a person directly and proximately harmed as a result of the commission of the offense. 18 U.S.C. § 3663A(2). The Seventh Circuit has made clear that while loss for sentencing guideline purposes may include actual or intended loss, for restitution purposes the statute requires that the award be based on the amount of loss actually caused by the defendant's criminal conduct. United States v. Rhodes, 330 F.3d 949, 953 (7th Cir. 2003); see also United States v. Swanson, 394 F.3d 520, 527 (7th Cir. 2005). In the present case, Doyle suffered no actual loss as a result of the criminal conduct of which defendant was found guilty. Her actual loss was caused by defendant's tortious conduct in damaging her land years ago. In computing the guidelines, I imposed a guideline enhancement based on intended loss because defendant intended to cause Doyle to lose her judgment via bankruptcy. However, because defendant waived discharge, Doyle's judgment remained valid, and she could pursue collection on it as if the criminal conduct had never happened. I therefore declined to award restitution. The government argued in the alternative that I should require defendant to pay this judgment as a condition of supervised release. While the court may require as a condition of supervision the payment of an amount not properly designated as restitution, see, e.g., United States v. Daddato, 996 F.2d 903, 905 (7th Cir. 1993) (allowing repayment of "buy money" as condition of supervised release), I declined to so order in the present case. I viewed doing so as an improper end run around the requirements of the MVRA and not reasonably related to the factors in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3583(d)(1). Again, Doyle suffered no loss arising out of defendant's criminal conduct or the investigation thereof. Rather, the offense was primarily an affront to the judicial system.

14

convictions.[10]

Second, I was impressed with the insight defendant finally seemed to display in his allocution. Defendant seemed to recognize the character flaws that caused an otherwise law abiding lawyer in his fifties to engage in the utter folly that was this crime. He stated that he should have walked away but, convinced that he was right and could use the bankruptcy system to get his way, he plowed forward. Defendant also recognized the terrible price his family was paying for his conduct. His wife, also a lawyer in her fifties with no prior record, sustained a felony conviction based on his involvement of her in his crime. Their daughter was left without a parent to guide her. While it was far too soon to be sure that defendant had fully come to grips with what he had done, his allocution provided me with some hope in that regard where previously I had none. I also considered the positives in defendant's character, including his assistance in creating the program to help inner city residents.

Third, I considered the fact that, ultimately, defendant's crime did not harm any individual victim. Despite all of his concealment and lies, at the end of the day everyone was left pretty much where they were before defendant committed this crime. Defendant agreed to waive discharge, and no creditor lost money. Under the guidelines, intended loss counts just the same as actual loss. However, under § 3553(a)(1), I may consider the economic realities of the situation in deciding the ultimate sentence.

Under all of the circumstances, I found a sentence of 54 months sufficient but not greater than necessary. This sentence adequately accounted for the above factors the

---

[10]Further, defendant received an enhancement under U.S.S.G. § 2B1.1(b)(9)(C) based on his use of the shell entities which facilitated the money laundering charges.

15

guidelines omitted, while still providing punishment sufficient to promote respect for law and vindicate the interests of the judicial system harmed by this crime.

### III.  CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 54 months on all counts of conviction, to run concurrently, followed by two years of supervised release, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 21st day of December, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge